IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CESAR BENITEZ (TDCJ No. 1917236), Petitioner | § § § § | |
| V. | § § | No. 3:17-cv-3095-N-BN |
| LORIE DAVIS, Director Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. | § § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Cesar Benitez, a Texas inmate, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. This resulting action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. The State filed a response opposing relief. *See* Dkt. No. 16. The State argued that Benitez's petition was untimely, in part, and failed on the merits, in part. *Id*. at 6-9. In the alternative, the State argued that Benitez's entire petition fails on the merits. *Id*. at 9-21. Benitez filed a reply. *See* Dkt. No. 21. Because Benitez's habeas petition fails on the merits, the Court need not analyze whether it is time-barred in part. For the reasons explained below, the Court should deny Benitez's federal habeas petition.

**Applicable Background**

Benitez "entered an open plea of guilty to one charge of aggravated sexual

1

assault with a deadly weapon and two charges of burglary of a habitation with intent to commit sexual assault. The trial court found [him] guilty of all three charges, made an affirmative finding of a deadly weapon in the sexual assault case, and assessed [his] punishment at eighty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice." *Benitez v. State*, No. 05-14-00384-CR, No. 05-14-00385, 05-14-00386-CR; *see State v. Benitez*, F13-54265-M, F13-55077-M, F14-00035-M (194th Judicial Dist., Dallas Cty, Tex.); Dkt. No. 17-4 at 1

The Fifth District Court Appeals affirmed the trial court's judgments. *See id*. Benitez did not file a petition for discretionary review, or a petition for a writ of certiorari. *See* Dkt. No. 3 at 3.

Benitez filed three state applications for writ of habeas corpus challenging his convictions. *See* Dkt. No. 18-5 at 5-22; Dkt. No. 18-12 at 5-22; Dkt. No. 18-20 at 6-22. The Texas Court of Criminal Appeals ("CCA") dismissed Benitez's first application (related to his burglary of a habitation conviction in cause number F-1355077-M) as non-compliant with Texas Rule of Appellate Procedure 73.1, *see* Dkt. No. 18-2, and denied his second and third state habeas applications (related to his aggravated sexual assault conviction in cause number F-1354265-M, and burglary of a habitation conviction in cause number F-1400035-M, respectivelly) without written order, on the trial court's findings, without a hearing. *See* Dkt. No. 18-6; Dkt. No. 18-14. Benitez then filed three further state habeas applications challenging his three convictions. *See* Dkt. No 18-22 at 5-22; Dkt. No. 18-27 at 5-22; Dkt. No. 18-29 at 5-22. On October 4,

2

2017, the CCA denied Benitez's applications without written order. *See* Dkt. No. 18-21; Dkt. No. 18-23; Dkt. No. 18-28.

In his federal habeas application, Benitez raises the following grounds for relief:

1. his plea was not made "knowingly, intelligently, or voluntarily;"

2. he is factually innocent;

3. the prosecutor committed misconduct by withholding evidence that he was taking steroids at the time of the offense and withholding police dashboard camera evidence that would show his "state of mind" at the time of his arrest;

4. trial counsel provided ineffective assistance by:

   a. pressuring Benitez to plead guilty,

   b. abandoning Benitez,

   c. failing to investigate,

   d. failing to call witnesses,

   e. failing to "know the laws of the case,"

   f. failing to present any "trial strategies,"

   g. failing to challenge the legality of the police interrogation,

   h. referring to Benitez by a derogatory name;

5. appellate counsel provided ineffective assistance by failing to raise "viable issues" found in the record.

Dkt. No. 3 at 6-8; Dkt. No. 5. Benitez also raises concerns regarding the "trial court's finding of facts" during his first round of state habeas proceedings. *See* Dkt. No. 5 at 5-7. But, because the state habeas court denied Benitez's state habeas applications in second round, "without written order," *see* Dkt. Nos. 18-21, 18-23, 18-28, these concerns

3

are moot and need not be addressed.

## Legal Standards and Analysis

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g., Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly

4

established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule

5

application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id*. Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the

6

Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

  The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting

*Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *cf. Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting Neal, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

That is, a Section 2254 petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

I.   Effect of a Guilty Plea

Benitez pleaded guilty under plea agreements. *See* Dkt. No. 17-9 at 72, 79; Dkt. No. 17-20 at 55, 68; Dkt. No. 17-25 at 27, 35. A guilty plea generally waives constitutional deprivations occurring prior to the plea. *See Haring v. Prosise*, 462 U.S. 306, 319–20 (1983). And a knowing and voluntary guilty plea waives all nonjurisdictional defects that occurred prior to the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992). This

8

waiver includes all claims of ineffective assistance of counsel, except those relating to the defendant's entry of a guilty plea. *See Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

Benitez alleges that his counsel told him he would "have to plead out" because his family could no longer pay for his defense. *See* Dkt. 3 at 7. He additionally avers that he was forced to plead guilty due to threats, force, and coercion by his counsel, the prosecution, and the trial judge. *See* Dkt. No. 3 at 8; Dkt. No. 5 at 19.

But a review of the record reveals that Benitez's guilty plea was knowing and voluntary. The CCA denied his state habeas petitions on the merits. And "the precise question ... is whether the [state] court's ultimate conclusion ... is objectively unreasonable." *Pondexter*, 346 F.3d at 148-49 (quoting *Neal v. Puckett*, 286 F.3d 230, 246); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) ("The statute compels federal courts to review for reasonableness the state court's ultimate decision, not every jot of its reasoning.").

The record demonstrates that Benitez signed "Judicial Confession[s]" and other guilty plea papers that included the "Court's Admonishments to Defendant," "Defendant's Statements and Waivers," and the "Court's Admonition to Sex Offenders."

9

Dkt. No. 17-9 at 73-76; Dkt. No. 17-20 at 56-59; Dkt. 17-25 at 28-34. In these documents, Benitez acknowledged his rights, stated that he is mentally competent, and understood the nature of the accusation against him. *See* Dkt. No. 17-9 at 73; Dkt. No. 17-20 at 56; Dkt. 17-25 at 28. He additionally acknowledged he was informed of the applicable range of punishment, and affirmed:

> I admit and judicially confess that I committed the offense of [aggravated sexual assault with a deadly weapon and burglary of a habitation with the intent to commit sexual assault], exactly as alleged in the charging instrument. I affirm that my plea and judicial confession are freely and voluntarily made, and not influenced by any consideration of fear, persuasion, or delusive hope of pardon or parole....
>
> [Defense counsel] has explained to me, and I have read and I understand, all the foregoing admonitions and warnings regarding my rights and my plea, and that my statements and waivers are knowingly, freely, and voluntarily made with full understanding of the consequences. I request that the Court accept all my waivers, statements, agreements, and my plea.

*See* Dkt. No. 17-9 at 74-75; Dkt. No. 17-20 at 57-58; Dkt. 17-25 at 29-30. "Official documents – such as a written plea agreement – are 'entitled to a presumption of regularity and are accorded great evidentiary weight.'" *United States v. McDaniel*, 907 F.3d 366, 371 (5th Cir. 2018) (quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).

At the change of plea hearing, Benitez stated that he had reviewed the three indictments in each of his cases with his attorney and that he understood the nature of the charges against him and the sentencing range in each charge. *See* Dkt. No. 17-13 at 8-9. He further acknowledged that his guilty pleas were not a result of any force, promise or coercion by anyone and that he was pleading guilty because he was in fact

10

guilty. *See* id. at 9-10. Benitez then pleaded guilty to all three charges. *See id.* at 10-11. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

And, in Benitez's's state applications for a writ of habeas corpus, he alleged that his pleas were not made "knowingly, intelligently, or voluntarily and violated his constructive rights to a fair trial proceeding," Dkt. No. 18-22 at 18; Dkt. No. 18-27 at 18; Dkt. No. 18-18, which the CCA denied. Benitez fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly-established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03; *Childress v. Johnson*, 103 F. 3d 1221, l224-25 (5th Cir. 1997). As such, Benitez fails to show there was no reasonable basis for the state court to deny relief. *See Richter*, 526 U.S. at 98.

Accordingly, Benitez's knowing and voluntary guilty plea waives all of his pre-plea claims except those that relate to the entry of his guilty plea. *See Tollett*, 411 U.S. at 267.

Benitez also alleges that he is innocent and that the prosecution withheld and destroyed evidence that would have demonstrated he was taking steroids at the time of the offenses and additionally that the prosecution withheld police dashboard camera evidence that would have demonstrated his "state of mind" at the time of his arrest (Claims 2 and 3). Because Benitez's guilty plea was knowing and voluntary, these

11

claims are waived. *See Tollett*, 411 U.S. at 267; *see also United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (stating "a voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant.").

And, for similar reasons, a number of Benitez's claims of ineffective assistance of counsel are waived. Benitez claims that his attorney provided ineffective assistance by failing to investigate, failing to file certain pre-trial motions, failing to call witnesses, failing to "know the laws of the case," failing to present any trial strategies, and failing to challenge the legality of the police interrogation and by referring to Benitez by a derogatory name. *See* Dkt. No. 3 at 7; Dkt. No. 5 at 13-16. But, because these claims do not relate to Petitioner's entry of his guilty plea, they are waived. *See Tollett*, 411 U.S. at 267; *Smith*, 711 F.2d at 682.

II.     Ineffective Assistance of Trial Counsel

Benitez also alleges that his counsel provided ineffective assistance by pressuring him to plead guilty and also by "completely abandon[ing] him." *See* Dkt. No. 3 at 7; Dkt. No. 5 at 13. Because these claims relate, or possibly relate to Benitez's entry of his guilty plea, they are not waived.

The Court reviews claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See id.* at 687-88. A petitioner must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662,

12

667 (5th Cir. 1995). To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear

13

to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be

14

substantial, not just conceivable." *Richter*, 562 U.S. at 112. If a petitioner fails to demonstrate prejudice, an inquiry into counsel's performance becomes unnecessary. *See Strickland*, 466 U.S. at 697.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a de novo review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas

15

review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ___, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'") (quoting *Burt*, 571 U.S. at 22, 15); *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In both of Benitez's cognizable IAC claims, he provides only cursory, generalized arguments that his trial counsel was ineffective. Regarding his claim that counsel pressured him to plead guilty, Benitez states that "counsel informed [him] that he would have to pled guilty due to the fact that petitioner's family could not provide him with anymore money to defend him" and that "counsel forced and coerced [him] to make a plea of guilty." *See* Dkt. No. 5 at 13. He also appears to contend that his counsel pressured him to enter a guilty plea by advising him of the "potential prison sentence if he did not plead." *See id.* at 16. And, regarding his claim that his counsel abandoned him, Benitez provides nothing more than to include this allegation in a

16

listing of his IAC claims. See Dkt. No. 3 at 7; Dkt. No. 5 at 13. He provides no further argument to support either claim.

And Benitez fails to demonstrate he was prejudiced by either of his trial counsel's allegedly deficient acts. The sole instance in which Benitez addresses prejudice is when he generally states that, "because of [his trial counsel's] deficient performance, [Benitez's] whole case matter was prejudiced, and harmed for ... conflict of interest between [Benitez] and [his trial counsel] because of money, and his continued uping of his fees for representation," and stating that Benitez "should have plenty of money to pay him." Dkt. No. 5 at 14.

Benitez has failed to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. He has not "affirmatively prove[n]" that he was prejudiced by any of his counsel's alleged deficient performance. Id. at 693. Thus, he has failed to demonstrate his counsel provided ineffective assistance. See id. at 687, 692.

III.     Ineffective Assistance of Appellate Counsel

Benitez avers that his appellate counsel was ineffective for "fail[ing] to raise viable issues found in the record." *See* Dkt. No. 3 at 7; Dkt. No. 5 at 17. He states, generally, that the record contained "several viable claims, including I.A.O.T.C., prosecutorial misconduct, Brady violations, as well as insanity of the petitioner that was never addressed by trial counsel, or the courts in this matter." *See id.*

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.

17

1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)). Counsel has a professional duty to choose among potential issues, according to his or her judgment as to their merit and his or her tactical approach to maximize the likelihood of success on appeal. *See Jones*, 463 U.S. at 752. Thus, in order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal was objectively unreasonable. *See United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (citing *Strickland*, 466 U.S. at 687).

Benitez fails to demonstrate that his counsel's decision was objectively unreasonable. He argues without further support that "a reasonable investigation would have revealed many issues that were ripe for review by the appellate court, especially the ineffective assistance of trial counsel." Dkt. No. 5 at 17. But Benitez's cursory argument fails to show how the decision not to raise an IAC or other issue on appeal was objectively unreasonable. This is insufficient. *See Conley*, 349 F.3d at 841.

And, even if Benitez could demonstrate counsel was deficient for failing to raise further claims on appeal, he fails to show that he was prejudiced by the action. Benitez states that, had his appellate attorney "searched and investigated the record," he would have found "issues that would have resulted in [Benitez's] case being remanded back to the trial court ... for further proceedings." *See* Dkt. No. 5 at 18. Benitez's conclusory claim fails to "affirmatively prove" that he was prejudiced by his counsels' alleged failure to raise further claims on appeal, and this claim should be denied. *See Strickland*, 466 U.S. at 693.

Further, Benitez raised these IAC issues in his state habeas petition. Because

the state habeas court's decision to deny relief did not involve an unreasonable application of Strickland, Benitez's § 2254 petition should be denied. Benitez fails to show that his counsel's performance was deficient.

Benitez also fails to show that the state-court decision was unreasonable by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Benitez fails to show there was no reasonable basis for the state court to deny relief. See Richter, 526 U.S. at 98.

## EVIDENTIARY HEARING

Finally, Benitez requests an evidentiary hearing "to more adequately develop the record." *See* Dkt. No. 5 at 5. But "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same as to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, Benitez only alleges non-defaulted claims under section 2254(d)(1) that were adjudicated on the merits in state court. As such, he cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court and is not entitled to an evidentiary hearing.

## RECOMMENDATION

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all

19

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 16, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE